# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

D'EDWARD WEBSTER,

    Plaintiff,

v.                                             Case No. 8:18-cv-02790-T-02AAS

SCOTT FREDRICKSEN, individually,
CLIFFORD BELCHER, individually,
GEORGE SOLAKIAN, individually, and
CITY OF BROOKSVILLE, FLORIDA,

    Defendants.
_____/

## ORDER

This action concerns an alleged unlawful seizure and use of a taser by officers. The matter comes to the Court on motions to dismiss Plaintiff Webster's Amended Complaint, Dkt. 27, from Defendants City of Brooksville, Dkt. 35, Scott Fredricksen, Dkt. 36, George Solakian, Dkt. 37, and Clifford Belcher, Dkt. 43. The Court **GRANTS** the motions in part.

## BACKGROUND

On the motions to dismiss, the Court accepts as true Plaintiff's allegations. On August 29, 2016, Brooksville Police Officers Solakian, Belcher, and Fredricksen were looking for a suspect with an outstanding warrant in Brooksville,

Florida. Dkt. 27 ¶ 13. While looking, the officers saw Plaintiff and another individual, Desmond Fagin, "standing on private property at the end of [a] driveway." *Id.* ¶ 21. The officers approached the individuals, inquired about the suspect, and asked for identification. *Id.* ¶ 40. Plaintiff gave his identification to the officers. *Id.* ¶ 41.

When Fagin handed the officers his identification, "Officer Solakian grabbed his arm and started asking about weed." *Id.* ¶ 42. When Fagin said he did not have any, Officer Solakian "slammed" Fagin onto the ground. *Id.* ¶¶ 43-44. Plaintiff then "backed up and turned around in fear" before Officer Fredricksen discharged his taser on Plaintiff. *Id.* ¶¶ 45-47.

In his Amended Complaint, Plaintiff also challenges the officers' account in the arrest report. Specifically, the police report states that the officers, as they were walking between houses in search of the suspect, could smell burning cannabis. *Id.* ¶ 19. The odor became stronger as the officers approached Plaintiff and Fagin, *id.* ¶ 22, and then Plaintiff began to walk away, *id.* ¶ 27. The officers told him he was not free to leave, *id.* ¶ 30, but when asked for identification Plaintiff fled, *id.* ¶ 32. After Officer Fredricksen used his taser on Plaintiff, the officers arrested Plaintiff and found narcotics on his body. Dkt. 43 at 9.

Plaintiff filed his Complaint on November 13, 2018, which was amended on January 30, 2019. Dkts. 1, 27. He raises three claims: 42 U.S.C. § 1983 under the

Fourth Amendment against the officers; § 1983 against Brooksville; and "supplemental state claims based on respondeat superior of City of Brooksville." Dkt. 27 at 7-9. Defendants have filed motions to dismiss to which Plaintiff did not respond. The Court heard oral argument on April 17, 2019 at which Plaintiff opposed the motions.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts may also consider documents attached to a motion to dismiss if they are (1) central to the plaintiff's claim; and (2) undisputed or, in other words, the "authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

# DISCUSSION

The Court dismisses each of Plaintiff's three claims without prejudice. Should the case proceed, the officers are free to again raise qualified immunity at the summary judgment stage. The Court will handle Plaintiff's claims in turn.

I. <u>42 U.S.C. § 1983: Battery, Excessive Force and False Arrest/False Imprisonment Against Officer Defendants</u>

Plaintiff appears to allege that the officers violated his Fourth Amendment rights when they detained him and Officer Fredricksen used his taser. Dkt. 27 ¶¶ 52-55. This § 1983 claim requires Plaintiff to prove that (1) the officers' conduct violated a constitutional right, and (2) the challenged conduct was committed "under the color of state law." *Melton v. Abston,* 841 F.3d 1207, 1220 (11th Cir. 2016). In response, the Officer Defendants invoke qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).

Plaintiff does not seem to dispute that in approaching Plaintiff and Fagin the officers were acting within the scope of their discretionary authority. *See Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008). Thus, to overcome the officers' qualified immunity Plaintiff must show that (1) the officers' conduct violated a constitutional right, and (2) the right was clearly established at the time of the

4

officers' alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson*, 555 U.S. at 236 (2009) (courts free to address inquiry in most appropriate order).

An individual is seized for Fourth Amendment purposes if, "in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave." *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) (citations omitted). Crediting Plaintiff's allegations, it is likely that officers did not seize Plaintiff until, at the earliest, Officer Solakian allegedly slammed Fagin onto the ground. That the officers asked Plaintiff for his identification does not change the calculus. *Id.* at 678 (finding no seizure despite police retention of license). Even if a reasonable person would have believed he was free to leave when the person he was speaking with was tackled, use of debilitating force such as a taser is unquestionably a seizure. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Smith v. LePage*, 834 F.3d 1285, 1294 n.4 (11th Cir. 2016) (undisputed that use of taser constituted seizure).

In their motions, the officers argue the odor of cannabis provided reasonable suspicion to detain Plaintiff. This may very well be true, *see, e.g.*, *State v. Williams*, 967 So. 2d 941, 944 (Fla. 1st DCA 2007), but is irrelevant at this stage because Plaintiff disputes the smell, *see Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). In the absence of the smell of cannabis or any other

5

source of reasonable suspicion, the detention (whether by slamming an individual to the ground, telling Plaintiff he was not free to leave, or the use of the taser) was unlawful.

The same is true for the taser. The officers' reliance on Fla. Stat. § 943.1717(1)(b), which requires an arrest or, presumably, a lawful custodial situation, is misplaced. The officers, moreover, provide no authority for the proposition that compliance with the statute necessarily satisfies the Fourth Amendment. *See Proch v. DeRoche*, No. 3:08cv484/MCR/EMT, 2011 WL 6841319, at *14 (N.D. Fla. Dec. 20, 2011), *report and recommendation adopted* (Feb. 9, 2012) (noting absence of caselaw on section 943.1717). Instead, to determine whether use of force comports with the Fourth Amendment, the question is still whether the officers' conduct was objectively reasonable. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002) (citations omitted).

Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight," the "relationship between the need and amount of force used," and the "extent of the injury inflicted." *Id.* (citations omitted). Here, in a light most favorable to Plaintiff's claim and taking all Plaintiff's allegations as true at face value, there was no crime at issue or indication of an immediate threat. The only factor

6

militating in favor of the use of force was the flight, but even then Plaintiff alleges he merely "backed up and turned around in fear" in response to seeing Fagin slammed to the ground. Even a single taser discharge can be disproportionate if these allegations are true. Discovery to be had and facts to be found may yield other results.

It is well established that, generally, police cannot seize an individual in the absence of a warrant or individualized suspicion. *Terry v. Ohio*, 392 U.S. 1 (1968). There is, moreover, a wide variety of pre-2016 cases that protect a passive or compliant individual's right against force. *See e.g.*, *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014); *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919 (11th Cir. 2000); *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Galvez v. Bruce,* 552 F.3d 1238 (11th Cir. 2008); *Lee*, 284 F.3d 1188; *Slicker v. Jackson,* 215 F.3d 1225 (11th Cir. 2000); *Smith v. Mattox,* 127 F.3d 1416 (11th Cir. 1997). The Court thus finds that, based on the allegations, there was a violation of a clearly established right.

This is not to say that Count I is without flaws. First, in the case's caption Plaintiff purports to sue the officers in their individual capacity, yet the complaint also sues them in their official capacity. Dkt. 27 ¶ 1. As the U.S. Supreme Court has noted, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*,

7

473 U.S. 159, 165 (1985) (citation omitted). Such claims must satisfy *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) as discussed more fully below. At the very least, because Count I is against the officers, to the extent Plaintiff seeks to sue them in their official capacity, he must clearly state allegations that will establish a *Monell* claim. Count I currently does not.

More fundamentally, at numerous instances in Plaintiff's factual allegations, Plaintiff challenges the statements in the police report and makes argument. *See, e.g.*, Dkt. 27 ¶¶ 19-39. This makes it difficult to determine what precisely Plaintiff alleges happened.

Plaintiff also alleges in conclusory terms that "Officers Belcher and Solakian were present when Officer Fredricksen unholstered his Taser and pointed it at Mr. Webster and both knew that Fredricksen was violating Mr. Webster's constitutional rights; further, Belcher and Solakian were in a position where they had sufficient time to intervene and prevent Officer Fredricksen's use of excessive force, but they failed to do so." Dkt. 27 ¶ 38. Though duty to intervene may be an available cause of action in an excessive force case, *Priester*, 208 F.3d at 927, based on Plaintiff's allegations it is not clear that Officers Belcher and Solakian had an opportunity to intervene. For example, there are no allegations that speak to the relevant timeframe, such as how long passed between Plaintiff "turning his back," Officer Fredricksen's unholstering of the taser, and the ultimate discharge.

Plaintiff does not even specifically allege, outside of the conclusion that "both knew that Fredricksen was violating Mr. Webster's constitutional rights," that Officers Belcher and Solakian even saw the taser before it was discharged. Dkt. 27 ¶ 38.

Equally problematic is Plaintiff's conclusion that "[a]ll three officers . . . participated in the detention of [Plaintiff] and the subsequent use of force." *Id.* ¶ 37. Should he replead, Plaintiff must provide sufficient allegations to find each officer individually liable as to each claim, whether detention, use of force, or duty to intervene.

Lastly, Count I is also titled "False Arrest/False Imprisonment," yet Plaintiff's allegations are insufficient to establish such a claim. *See, e.g.*, *Ortega v. Christian*, 85 F.3d 1521, 1525-26 (11th Cir. 1996) (citations omitted) ("Under section 1983, [a plaintiff] must meet the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment"; "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest."). The Court further notes that the

"battery" claim should be repleaded as use of force under the Fourth Amendment.[1] Count I is dismissed with leave to amend.

   II.   42 U.S.C. § 1983 Against City of Brooksville

Plaintiff alleges that Brooksville Police Department's "policies or customs exhibit[] deliberate indifference to the constitutional rights of persons in the City of Brooksville which caused the violation of Plaintiff's rights." Dkt. 27 ¶ 57. He further seems to allege negligent hiring of police officers, ¶ 58, inadequate supervision and training of police officers, ¶ 59, and failure to investigate use of force, ¶ 60.

To prevail under *Monell*, Plaintiff must show that (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citations omitted). Even assuming Plaintiff's constitutional rights were violated, his complaint lacks nonconclusory allegations of a custom or policy constituting deliberate indifference to Fourth Amendment rights.

In this vein, Plaintiff does not direct the Court to any specific policy or custom. He merely alleges that Officer Fredricksen discharged his taser eight times

---

[1] In the Eleventh Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim," yet "a claim for excessive force during a legal stop or arrest is a discrete claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000).

in August 2016 without being disciplined, yet there is no specific allegation that any instance was even unlawful. This unsubstantiated history of one individual is not enough for *Monell*. Nor is this the sort of case where "a pattern of similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 63 (2011); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

As for failure to train or supervise, a municipality is liable "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). But "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action," such as "a history of widespread prior abuse." *Id.* at 1350-51 (citations omitted).

Finally, Plaintiff mentions "fail[ure] to exercise reasonable care in hiring its police officers" only in passing. Dkt. 27 ¶ 58. It is not clear to the Court whether Plaintiff in fact attempts to raise a claim for negligent hiring, but even assuming he does and that negligent hiring is available under § 1983, *compare Ashley v. City of Hialeah*, No. 11-20490-CIV, 2011 WL 3236051, at *4 (S.D. Fla. July 28, 2011), *with Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018)

(citations omitted) ("Negligent hiring or retention is not actionable under Section 1983"), Plaintiff's allegations are insufficient. There are no allegations, for example, of continued retention of an officer despite prior acts of professional misconduct, as in *Ashley*, nor, at least in the state law context, allegations to establish that an agency "in an 'operational capacity,' either disregarded or negligently implemented preexisting hiring protocols." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013); *see also Grimm v. City of Boca Raton*, No. 15-80608-CIV-MARRA, 2015 WL 4483974, at *8 (S.D. Fla. July 22, 2015) (explaining state law negligent hiring and negligent retention claims). Count II is dismissed without prejudice.

    III.    <u>Supplemental State Claims Based on Respondeat Superior of City of Brooksville</u>

Plaintiff lastly claims that Brooksville "is liable under the laws of the state of Florida for the battery, excessive force, false arrest and false imprisonment committed against Plaintiff" by the officers. Dkt. 27 ¶ 64. The problem for Plaintiff is that his allegations, as pleaded, are insufficient for the underlying state law claims. For example, his state law claims are not pleaded independently of the broadly pleaded § 1983 claim, and the allegations that satisfy the elements of the state law claims are not clearly laid out. This is akin to shotgun pleading and dismissal is warranted.

It is worth noting that, though respondeat superior is unavailable under *Monell*, it may be under Florida law where "a governmental entity is liable for all torts . . . unless the actor was acting in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Tepper v. Canizaro*, No. 604CV1257ORL31DAB, 2005 WL 2484644, at *9 (M.D. Fla. Oct. 7, 2005), *aff'd*, 175 F. App'x 275 (11th Cir. 2006); *see also McGhee v. Volusia County,* 679 So.2d 729, 733 (Fla.1996) ("In any given situation either the agency can be held liable under Florida law, or the employee, but not both."). Though Plaintiff's claims are not necessarily mutually exclusive as an action could feasibly violate a clearly established constitutional right without being committed in bad faith, and, in any event, alternative pleading is certainly allowed, *see, e.g.*, *C.P. by & through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1095 (M.D. Fla. 2015), Plaintiff should keep the above in mind if he wishes to replead.

Whether Plaintiff's allegations pass muster upon discovery is yet to be seen. Should Plaintiff replead, Defendants are invited to revisit qualified immunity at the summary judgment stage.

## CONCLUSION

The Court **GRANTS** in part Defendants' motions to dismiss. Plaintiff's Amended Complaint is dismissed without prejudice. Plaintiff has fourteen (14) days from the date of the Court's oral order on April 17, 2019 to refile consistent with the above.

**DONE AND ORDERED** at Tampa, Florida, on April 22, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record